IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BROOKS GOPLIN,

                       Plaintiff,

v.                                                                       OPINION and ORDER

WECONNECT, INC.,                                  17-cv-773-jdp

                       Defendant.

---

Plaintiff Brooks Goplin has sued defendant WeConnect, Inc. for violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–19, and Wisconsin wage and hour laws. Dkt. 1. The following motions are pending before the court: (1) Goplin's motion for conditional certification of a class of similarly-situated current and former satellite technicians, Dkt. 44; (2) Goplin's renewed motion to dismiss WeConnect's counterclaims, Dkt. 55; and (3) WeConnect's motion to compel arbitration of putative opt-in class members' claims in the event that the court conditionally certifies the collective. Dkt. 67.

WeConnect has raised legitimate judicial economy concerns about conditionally certifying a collective that includes technicians with enforceable arbitration agreements. Doing so seems likely to spawn a flood of motions to compel arbitration for opt-in plaintiffs, which the court would have to adjudicate individually. At the same time, the court recognizes that, with each passing day, the statutes of limitations for putative members of the collective continue to run. In an effort to balance these competing concerns, the court will conditionally certify the collective and authorize notice, but it will require the parties to fully brief all issues concerning the enforceability of the various arbitration agreements at decertification and Rule 23 class certification. If it turns out that members of the collective have enforceable arbitration

agreements, or that litigating the enforceability of these agreements will entail substantial individualized analysis, that will militate in favor of decertification.

The court will also grant Goplin's motion to dismiss WeConnect's counterclaims.

The court will dismiss WeConnect's motion to compel arbitration as to the opt-in plaintiffs without prejudice. After the court rules on decertification and Rule 23 class certification, and assuming that ruling does not moot the arbitration issue, WeConnect can renew its motion to compel arbitration.

BACKGROUND

Goplin formerly worked for WeConnect as a cable and satellite technician. In that role, he traveled to customers' homes to install or repair WeConnect's satellite dish systems. He alleges that WeConnect failed to pay him and other similarly-situated technicians for the time they spent performing work at the start and finish of their shifts. Earlier in the litigation, WeConnect filed a motion to dismiss Goplin's suit under Rule 12(b)(3), alleging that he was subject to a binding agreement to arbitrate his claims in Green Bay, Wisconsin. Dkt. 7. The court denied WeConnect's motion because WeConnect was neither a signatory to nor named in the arbitration agreement Goplin signed; the agreement referred only to Goplin and an entity called Alternative Entertainment, Inc. (AEI). Dkt. 20.

WeConnect subsequently adduced evidence that AEI and WeConnect are two names for the same corporation, and that AEI had merely changed its name to WeConnect in August 2016. *See* Dkts 27–29. But this did not change the court's conclusion as to the agreement's unenforceability. By the time Goplin signed the AEI arbitration agreement in March 2017, his employer's name was WeConnect, not AEI. There is nothing to suggest that WeConnect was

continuing to do business as AEI or was otherwise entitled to enter into valid, enforceable contracts under AEI's name at the time Goplin was hired.

In the meantime, three additional former technicians—Dustin Bobb, Anthony Milz, and Zachary Oquist—filed consent forms to opt into the case. Dkt. 4; Dkt. 5; Dkt. 15. WeConnect then filed counterclaims against Goplin, Bobb, Milz, and Oquist, alleging that they defrauded WeConnect by intentionally failing to abide by the company's "clock in" and "clock out" procedures so as to overstate their hours worked. Dkt 40. WeConnect asserts breach of contract, fraud, and unjust enrichment claims and seeks compensation for its alleged overpayments with interest, punitive damages, attorneys' fees, and any other relief deemed reasonable. Goplin moves to dismiss those counterclaims. Dkt. 55.

ANALYSIS

**A. Motion for conditional certification**

Section 216(b) of the FLSA authorizes plaintiffs to bring "collective actions" against employers to recover unpaid compensation for themselves and on behalf of "other employees similarly situated." 29 U.S.C. § 216(b). Many courts, including this one, apply a two-step approach to certifying collective actions. Initially, the plaintiff moves for conditional certification, at which point he need only make a "modest factual showing sufficient to demonstrate that [he] and potential plaintiffs together with victims of a common policy or plan that violated the law." *Austin v. CUNA Mut. Ins. Soc'y*, 232 F.R.D. 601, 605 (W.D. Wis. 2006). If the plaintiff satisfies this initial burden, the court grants conditional certification and authorizes notice to all potential plaintiffs of their eligibility to opt into the collective action. At the close of discovery, the defendant may file a motion for decertification, at which point

"the court determines whether the plaintiffs are *in fact* similarly situated to those who have opted in." *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 358 (W.D. Wis. 2014) (internal quotation marks omitted).

### 1. Applicable standard

The standard for conditional certification is fairly lenient, and entails neither adjudicating the merits of the claims nor the kind of rigorous analysis typical of class certification analysis under Rule 23. *Berndt v. Cleary Bldg. Corp.*, No. 11-cv-791, 2013 WL 3287599, at *7 (W.D. Wis. Jan. 25, 2013). Instead, the court simply analyzes whether the plaintiff has adduced admissible evidence that the potential class members are sufficiently similarly situated such that a collective action would facilitate efficient resolution of common claims. Such a standard is appropriate because conditional certification does nothing more than authorize the plaintiff to take discovery, notify potential plaintiffs of the suit, and give them an opportunity to opt in. *Id.*

Here, WeConnect suggests that because the parties have already engaged in substantial discovery, the court should apply a more stringent, intermediate standard of review. *See, e.g.*, *Boelk v. AT&T Teleholdings, Inc.*, No. 12-cv-40, 2013 WL 261265, at *14 (W.D. Wis. Jan. 10, 2013) (applying "more scrutiny to plaintiffs' claim than would normally be applied at the conditional certification stage" in light of the significant discovery in the record); *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 439 (S.D. Ind. 2012) (same). But discovery in this matter is not nearly as far along as it was in cases like *Boelk* and *Hawkins*. The evidence adduced at conditional certification in those cases was sufficiently comprehensive to allow courts to collapse the two-part certification inquiry into a single step. By contrast, the parties here have engaged in minimal opt-in discovery (i.e., three depositions of technicians who worked in the Madison

4

region). This handicaps Goplin's ability to meet any burden higher than the one traditionally applied at this stage, so the court will stick to that standard here.

### 2. Goplin's similarity to proposed members of the collective

Goplin has made the modest factual showing necessary for conditional certification. He adduces evidence that he and other putative class members were paid only from the time they arrived at their first client site to the time they finished at their last client site. They received no compensation for the time spent performing pre- and post-shift tasks, such as loading and unloading equipment from their vehicles at the beginning of every workday and traveling to and from customers' homes. As a result, technicians were systematically denied the overtime wages that they were entitled to under the FLSA. Goplin asks the court to conditionally certify a class of all technicians employed by WeConnect in the past three years, which could comprise as many as 750 individuals scattered throughout Wisconsin and Michigan.

WeConnect challenges the sufficiency of Goplin's evidence that he is similarly situated to others in the putative class of technicians on four fact-specific grounds. First, it contends that Goplin and the other opt-in plaintiffs' practice of storing company equipment in their homes and loading it into and out of their vans every day violated the company's official written policy. *See* Dkt. 58-1; Dkt. 58-2; Dkt. 58-3 (vehicle use agreements signed by Brooks, Oquist, and Bobb, respectively, which state that "company equipment should remain in the vehicle at all times"). WeConnect argues that this precludes a showing of similarly situatedness because any alleged FLSA violations would only have occurred by dint of individual technicians' failure to follow company policy. Goplin, Oquist, and Bobb acknowledged that this policy existed on paper, but testified that their vans were only large enough to hold approximately one day's worth of supplies. They allege that their managers knew about and encouraged their practice

5

of storing excess company equipment in their homes, because it enabled technicians to wait longer in between restocking trips to their territory offices.

Although Goplin, Oquist, and Bobb all worked in the Madison region, it is reasonable to infer at this stage, in the absence of evidence to the contrary, that vans in other regions were the same size, and that employees in other regions carried the same amount of equipment. WeConnect does not cite any evidence showing that there are regional differences as to these matters. At this stage, such factual ambiguities must be resolved in the plaintiff's favor. *See Berndt*, 2013 WL 3287599, at *7 ("Conditional certification analysis does not require the court to make any findings of fact with respect to contradictory evidence presented by the parties[,] nor does the court need to make any credibility determination with respect to the evidence presented." (internal quotation marks omitted)).

Second, WeConnect highlights various factual distinctions between Goplin and other members of the putative collective that it says should preclude conditional certification. It notes that Goplin was an hourly employee, whereas the vast majority of other technicians received unit pay. This distinction might be relevant for damage calculation purposes, but it does not preclude conditional certification. Unit pay employees are also entitled to overtime wages. And WeConnect adduces no evidence that the time reporting policies Goplin challenges varied based on compensation scheme.

Third, the court rejects WeConnect's argument that Goplin is not sufficiently similarly situated because he was a "rural" technician rather than a "local" technician. WeConnect may be correct in suggesting that local technicians generally had less need to store company equipment in their homes by virtue of their ability to return to their territory offices to restock

6

with greater frequency. But this distinction ultimately goes to damages, not the propriety of conditional certification.

Fourth, WeConnect notes that Goplin testified about his regular practice of driving his daughters to daycare in the mornings in between loading up his van and driving to his first customer site. WeConnect suggests that this undermines his "continuous workday" theory such that conditional certification would be inappropriate. But these are precisely the sort of fine-grained factual distinctions that are the more appropriately addressed at decertification. *See Gumbo v. Lucent Techs., Inc.*, No 05 c 3701, 2005 WL 3542485, at *4 (N.D. Ill. Dec. 22, 2005) ("The possibility of a fact-intensive inquiry into whether all members of the eventual putative opt-in class are in fact similarly-situated does not preclude authorizing notice . . . ."). None of these fact-specific distinctions are sufficient to preclude conditional certification.

### 3. Arbitration agreements

WeConnect contends that Goplin is not similarly situated to other members of the proposed collective because his arbitration agreement is not representative of other members of the collective. Although Goplin's arbitration agreement has been deemed unenforceable by this court, other technicians signed different versions of the agreement that do not suffer from the same defects. This issue raises a closer question about the propriety of conditional certification.

There are three different versions of the arbitration agreement in issue here. The first is the version signed by Goplin and the opt-in plaintiffs, which WeConnect says was signed by a total of 786 technicians between February 2013 and October 2017. WeConnect contends that the "vast majority" of these agreements were executed before AEI became WeConnect in August 2016. Dkt. 57, at 9. The court's prior ruling on Goplin's arbitration agreement would

7

therefore not affect their enforceability: The technicians hired prior to August 2016 were agreeing to work for a company called AEI, Inc., which was consistent with the name listed on their arbitration agreements. WeConnect also asserts that the "vast majority" of these agreements were countersigned by the company, Dkt. 57, at 9, although none of the four agreements in the record so far bear any such countersignature. *See* Dkt. 9-1 (Goplin's agreement); Dkt. 74-1 (Oquist's agreement); Dkt. 74-2 (Bobb's agreement); Dkt. 74-3 (Milz's agreement).

The second version of the arbitration agreement went into effect on November of 2017, when WeConnect updated its template to replace all references to AEI with WeConnect, Inc. This second version of the agreement was in use between November 2017 and June 2018 and was signed by approximately 145 technicians. *See* Dkt. 62-2 (copy of arbitration agreement template #2). WeConnect contends that all copies of this agreement were countersigned by the company, but there are no executed examples of it in the record.

In June of 2018, the company introduced a third version of the arbitration agreement, which approximately 210 technicians have signed to date. *See* Dkt. 62-3 (copy of arbitration agreement template #3). This version is substantially revised, but it contains the same provisions requiring arbitration of wage and hour claims and waiving any right to class or collective action. Again, WeConnect contends that all copies of this agreement have been countersigned, but there are no executed examples of it in the record.

The first version of the agreement may be enforceable if executed before the name change, as would be the second and third versions of the agreement that refer to WeConnect rather than AEI. That would potentially leave only a subclass of technicians who signed

arbitration agreements between the August 2016 and November 2017 with claims actionable in this forum.

Goplin points out that other district courts have conditionally certified collective actions and even certified classes under Rule 23 despite the presence of potentially enforceable arbitration agreements among putative class members. *See, e.g.*, *Weckesser v. Knight Enters. S.E., LLC*, No. 2:16-cv-2053-RMB, 2018 WL 4087931, at *2-3 (D.S.C. Aug. 27, 2018) (rejecting as premature defendant's argument that putative collective action was not similarly situated because potential opt-in plaintiffs were subject to arbitration agreements); *Garcia v. JCPenny Corp., Inc.*, No. 12-cv-3687, 2016 WL 878203, *7 (N.D. Ill. Mar. 8, 2018) (in Rule 23 class action, the court determined that the "sensible course . . . is to decide whether to certify the class without considering the possibility of arbitration and then allow JCPenney, if it so chooses, to file its motion to compel arbitration. . . . If it turns out that the [class members] must arbitrate, the court can always decertify, subclassify, or otherwise alter the class later" (citations omitted)).

But the case law on this issue is by no means uniform. Some courts have declined to conditionally certify classes in light of the prospect of enforceable arbitration agreements. *See, e.g.*, *White v. Turner*, No. CV H-15-1485, 2016 WL 1090107, at *4 (S.D. Tex. Mar. 21, 2016). Others have opted to conditionally certify only the subclass of individuals known *not* to be subject to arbitration. *See, e.g.*, *Fischer v. Kmart Corp.*, No. civ. 13-4116, 2014 WL 3817368, at *6–8 (D.N.J. Aug. 4, 2014). At least one court has granted conditional certification only to find itself entertaining and granting motions to compel arbitration as to dozens of opt-in class members. *See, e.g.*, *Aubuchan v. Doe Run Res. Corp.*, No. 4:13 cv 2519 (E.D. Mo. Dec. 18, 2013). The court is not eager to embark on such a course here. "It would be a disservice to judicial

9

efficiency to certify all [employees], when those with arbitration agreements are subject to additional, prolonging motions practice which will likely disqualify them from the case." *Morangelli v. Chemed Corp.*, CIV. 10-0876, slip op. at 8 (E.D.N.Y. June 17, 2010).

At the same time, the court is wary of further delay in authorizing notice to those putative class members with potentially actionable claims in this forum. Under 29 U.S.C. § 256(b), an individual's claim is not "commenced" until he or she files a consent to join the lawsuit, suggesting that the statute of limitations continues to run until the consent is filed. Nor can the court conditionally certify a class limited to only those without enforceable arbitration agreements; at this point, there is not enough information in the record to permit the court to draw any definitive conclusions as to whether the various other versions of the agreement are enforceable.

In light of these considerations, the court will conditionally certify the class now, but will order the parties to address the arbitration issue in their decertification and Rule 23 briefing. Specifically, the parties should develop the record as to whether the three versions of the arbitration agreement signed by opt-in plaintiffs are enforceable. The parties should focus their discussion on the various categories of arbitration agreement at issue, which should *not* entail individualized analysis of each opt-in plaintiff. If the court determines that one or more versions of the agreement are enforceable, or that adjudicating their enforceability will require substantial individualized review, that will militate in favor of decertifying the collective and allowing only Goplin and the subclass of technicians without enforceable agreements to move forward (assuming that that subclass otherwise meets the requirements necessary to proceed collectively).

**4. Scope of conditionally certified class**

The court grants Goplin's motion to conditionally certify and send court-authorized notice to a class consisting of all technicians who worked for WeConnect on or after March 6, 2015—three years from the date that Goplin filed his conditional certification motion.

WeConnect argues that, in light of the prior briefing on Goplin's arbitration agreement, Goplin should be precluded by judicial estoppel from now taking the position that AEI and WeConnect are the same entity for the purposes of this lawsuit. It asks the court to cabin the opt-in class by starting the class period on August 18, 2016, the date that AEI became WeConnect. But Goplin has never, in fact, "taken the position" that AEI and WeConnect were different companies. Dkt. 57, at 23. Rather, Goplin raised questions about the enforceability of Goplin's arbitration agreement, which WeConnect then failed adequately to rebut. WeConnect's failure to carry its own burden is not a basis for judicial estoppel.

**5. Notice**

Goplin has submitted a proposed notice based on the class definition discussed above. Dkt. 46-6. WeConnect has not specifically objected to it. Nonetheless, the notice should be amended so as to put recipients on notice of the possibility that members of the opt-in class may ultimately be bound by arbitration agreements. The parties should meet and confer about proposed additional language and submit it to the court by the deadline set below.

Goplin seeks a 60-day notice period, which is reasonable. *See Witteman v. Wis. Bell, Inc.*, No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) (finding that 30 days leaves little room for any delays that might occur as a result of difficulty in locating former employees). The deadlines for moving for decertification and Rule 23 class certification will be

extended to 30 days after the close of the notice period. This notice period may require other adjustments to the litigation schedule, which the court will take up in a future order.

## B. Motion to compel arbitration

WeConnect has filed a motion to compel arbitration of putative class members' claims, which it frames as an argument in the alternative should the court conditionally certify the class. Dkt. 67. This motion is premature as to any as-of-yet unknown class members who opt in as a result of the court-authorized notice. No one knows who will opt into the collective yet, let alone whether arbitration agreements signed by any hypothetical opt-in plaintiffs are enforceable.

In its reply brief, WeConnect suggests for the first time that its motion to compel arbitration is not premature as to Oquist, Bobb, and Milz, who have already opted into the collective. Dkt. 72. It attaches copies of the arbitration agreements signed by Oquist, Bobb, and Milz, which the court had not previously seen. Dkt. 74-1; Dkt. 74-2; Dkt. 74-3. As a general rule, arguments and evidence that could have been raised in the opening brief but are first raised in the reply brief are waived. *Judge v. Quinn*, 612 F.3d 537, 542 (7th Cir. 2010). The court will dismiss WeConnect's motion to compel without prejudice.

WeConnect should reassert its arguments in favor of compelling arbitration as to the opt-in plaintiffs in its motion to decertify the FLSA collective and its opposition to Rule 23 class certification. To minimize unnecessary motions practice, WeConnect should not file motions to compel as to individual opt-in plaintiffs during the opt-in period. WeConnect can renew its motion to compel arbitration after the court rules on decertification and Rule 23 class certification (assuming those rulings do not moot the arbitration issue).

**C. Motion to dismiss WeConnect's counterclaims**

WeConnect has filed amended state-law counterclaims against Goplin, Bobb, Milz, and Oquist, alleging that they took advantage of the company's policy of relying on technicians to self-report their hours so as to overstate their time on-the-clock and inflate their paychecks. Dkt 40. It asserts claims for breach of contract, fraud, and unjust enrichment. Dkt. 55.

Goplin moves to dismiss these counterclaims on two grounds. First, he argues that WeConnect has failed to establish the various legal elements of its claims as required by Rule 12(b)(6) and Rule 9(b). Second, he argues that the court should decline to exercise supplemental jurisdiction under 28 U.S.C. § 1367 because WeConnect's claims would "substantially predominate" over the federal claims, and because this case exemplifies the sort of "exceptional circumstance" that provides "compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c)(2), (4).

WeConnect's counterclaim allegations against Goplin and the opt-in plaintiffs are threadbare. They consist of the same set of conclusory allegations, repeated four times over. The only differences are the name of the technician in question and the characterization of how the technician was paid—hourly on a unit pay basis. But ultimately the court need not address whether WeConnect has sufficiently stated its claims under Rules 12(b)(6) or 9(b) because the court agrees with Goplin that dismissal here is proper under 28 U.S.C. § 1367.

**1. Applicable standard**

Because WeConnect's counterclaims arise under state law, the court can only exercise jurisdiction over them if they fall within the purview of the supplemental jurisdiction statute, 28 U.S.C. § 1367. For supplemental jurisdiction to be proper, WeConnect's counterclaims must be so related to the claims over which the court has original jurisdiction (i.e., Goplin's

FLSA claims) that they form part of the same case or controversy. 28 U.S.C. § 1367(a). Claims are considered part of the same case or controversy if they derive from a common nucleus of operative facts, but generally speaking even a loose factual connection will suffice. *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007). Here, there is little question that WeConnect's asserted counterclaims are part of the same case or controversy as Goplin's FLSA claims.

But even where the requirements of § 1367(a) are met, a district court may, in its discretion, decline to exercise supplemental jurisdiction if one or more of the following four factors is present: (1) the claim raises a novel or complex issue of state law; (2) the claim substantially predominates over the claims over which the court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c). Here, Goplin contends that the second and fourth factors are met.

### 2. Substantially predominates

Goplin contends that, if permitted to go forward, WeConnect's counterclaims would require considerable technician-specific fact-finding that would substantially predominate over Goplin's FLSA claims. He cites *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625, 2010 WL 2671585 (W.D. Wis. June 30, 2010) to illustrate his point. In *Espenscheid*, Judge Crabb held that a satellite company's state law counterclaims for misrepresentation, unjust enrichment, and detrimental reliance would substantially predominate over the FLSA claims brought by its installation technicians:

> Defendants' counterclaims would require analyzing every time sheet submitted by each opt-in plaintiff, determining whether the time sheets were falsified, who committed the falsification, whether such falsification was intentional, reckless or negligent,

14

> whether defendants relied upon the alleged misrepresentation and whether defendants suffered damages. In contrast, the main issue in plaintiffs' FLSA and state wage claims is whether defendants' company-wide piece-rate pay system, which applies to all installation technicians, is lawful. Thus, defendants' counterclaims, which will necessarily require highly individualized determinations from the outset of this case, would overwhelm plaintiffs' claims if allowed to proceed in the same lawsuit.

2010 WL 2671585, at *4. The counterclaims at issue here would require a similar level of individualized attention.

WeConnect argues that the reasoning in *Espenscheid* does not apply in this case. In *Espenscheid*, the defendants sought to press counterclaims against every plaintiff who opted into the collective action, whereas here WeConnect has only brought counterclaims against Goplin and the three opt-in plaintiffs. But this reasoning is not persuasive in light of WeConnect's simultaneous contention in a footnote that, if it "discovers other individuals who . . . falsified their time records, [it] may seek to add additional Counterclaim Defendants." Dkt. 42, at 5 n.3. So far, WeConnect has asserted identical counterclaims against every technician in the suit, and there is little reason to assume that it will stop there. WeConnect also argues that Judge Crabb's reasoning in *Espenscheid* is distinguishable because the counterclaims in *Espenscheid* involved opt-in plaintiffs from multiple states and would have raised choice of law issues. But the putative collective at issue here includes technicians from Michigan as well as Wisconsin. And in any event, the prospect of individualized discovery and fact-finding are the heart of the court's § 1367(c) concerns.

WeConnect cites three cases from other circuits in which courts have declined to dismiss state-law counterclaims in FLSA actions. *See Ahle v. Veracity Research Co.*, 641 F. Supp. 2d 857, 862–64 (D. Minn. 2009); *Zambrana v. Geminis Envios Corp.*, No. 08-20546-civ, 2008 WL

15

2397624 (S.D. Fla. June 10, 2008); *Lombardi v. City of Cornersville, TN*, No. 1:06-0072, 2007 WL 190324 (M.D. Tenn. Jan. 22, 2007). It also cites a case in which a court granted a defendant's motion to amend its answer to add counterclaims in a FLSA action. *See Johnson v. Wave Comm GR*, 6:10-cv-346, 2011 WL 13134625 (D.N.J. Sept. 27, 2011). These cases are distinguishable. *Lombardi* and *Zambrana* both involved counterclaims asserted against a singular named plaintiff. *Johnson* involved relatively straightforward counterclaims for unjust enrichment based on company-facilitated purchases of plaintiffs' specialized tools, and the court relied on the fact that pay records already produced in discovery for the FLSA case would readily document the amounts deducted from plaintiffs' pay for the purchase of those tools. 2011 WL 13134625, at *10. *Ahle* is more on point, but there is in-circuit case law that cuts in the opposite direction. *See, e.g.*, *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1020 (N.D. Ill. 2009) (dismissing state law counterclaim in FLSA action where that counterclaim would require additional, different discovery, and had the potential to predominate over FLSA claim); *Strom v. Strom Closures, Inc.*, No. 06 c 7051, 2008 WL 489363, at *5 (N.D. Ill. Feb. 20, 2008) (declining jurisdiction over counterclaim in FLSA action where the counterclaims "clearly predominate over the straightforward minimum wage claims presented in the complaint").

Because the court is persuaded that WeConnect's counterclaims would predominate over the FLSA claims if allowed to proceed, the court declines to exercise supplemental jurisdiction over WeConnect's counterclaims and will dismiss them without prejudice under Rule 12(b)(1). WeConnect is free to assert its counterclaims independently in another forum.

ORDER

IT IS ORDERED that:

1. Plaintiff Brooks Goplin's motion for conditional certification and court-authorized notice, Dkt. 44, is GRANTED.

2. The parties are directed to meet and confer about modifying the proposed class notice to include language addressing the possibility of arbitration, as outlined in the opinion above. The parties must submit a joint proposed class notice no later than December 13, 2018. Once it receives the proposed language, the court will approve the notice and reset the deadline for submitting motions and briefs to certify the class under Rule 23 and decertify the FLSA collective action.

3. Plaintiff's renewed motion to dismiss defendant's counterclaim, Dkt. 55, is GRANTED. Defendant's counterclaims are DISMISSED without prejudice.

4. Defendant WeConnect, Inc.'s motion to compel arbitration, Dkt. 67, is DENIED without prejudice.

Entered December 6, 2018.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge