IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

**BROOKS GOPLIN**,
Individually and on behalf of
all others similarly situated,

                                  Case No. 17-cv-773

            Plaintiff,

    vs.

**WECONNECT, INC.**,

            Defendant.

---

## JOINT MOTION FOR COURT APPROVAL OF SETTLEMENT AND DISMISSAL WITH PREJUDICE

---

Pursuant to Fed. R. Civ. P. 7(b), the parties, by their undersigned counsel, hereby respectfully move the Court for an order to: (a) approve their Settlement Agreement and Release of Claims ("Settlement and Release Agreement" or "Settlement Agreement"); and (b) upon approval of the Settlement and Release Agreement, dismiss this action with prejudice and without further costs to any party pursuant to Fed. R. Civ. P. 41. In support of this Motion, the parties state as follows:

This is an action brought under the Fair Labor Standards Act ("FLSA") and Wisconsin law. The parties have reached a settlement. Pursuant to that settlement, in exchange for a monetary payment, Plaintiff and collective class members are required to dismiss their claims with prejudice and release Defendant from any further liability under the FLSA and Wisconsin law for the time period in question. The Plaintiff has further agreed to amend his complaint to remove Fed. R. Civ. P. 23

class allegations as this settlement impacts only the opt-in FLSA plaintiffs, not members of the putative Rule 23 class. Plaintiff's Amended Complaint is filed with this Motion. A copy of the parties' Settlement and Release Agreement is attached as Exhibit A to the Declaration of David C. Zoeller ("Zoeller Decl.") accompanying this Motion.

In order for a private settlement of FLSA claims to be enforceable, the settlement must be approved by the Department of Labor ("DOL") or a district court. *See, e.g., Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986); *Adams v. Walgreen Co.*, No. 14-cv-1208-jps, 2015 WL 4067752, at *1 (E.D. Wis. July 2, 2015). The standard for evaluating such settlements is to determine whether it constitutes "a fair and reasonable resolution of bona fide disputes under the FLSA." *Lynn Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); *Walton*, 786 F.2d at 306; *Armstrong v. Wasatch Front Home Servs., LLC*, No. 12-cv-199-wmc, 2012 U.S. Dist. LEXIS 85378 (W.D. Wis. June 20, 2012, Conley, J.); *Ayala v. Startek Workforce Solutions, LLC*, No. 16-cv-367-bbc, 2017 U.S. Dist. LEXIS 156153 (W.D. Wis. Sept. 25, 2017, Crabb, J.). This settlement is a fair and reasonable resolution of the disputed issues that will result in significant payment to the collective class members in exchange for the release of their claims under the FLSA and Wisconsin law. Because the parties believe this settlement represents a fair result for the class, they are seeking the Court's approval of the Settlement Agreement along with dismissal of this action with prejudice.

## FACTUAL BACKGROUND

Defendant, WeConnect, Inc. (previously known as Alternative Entertainment, Inc.), provides satellite television services in Wisconsin and Michigan. In providing these services, Defendant employs Home Entertainment Specialists ("Specialists"), whose responsibilities include installing and maintaining satellite dish systems and related equipment at the homes of Defendant's customers. Specialists are supervised by Field Service Managers ("FSMs"), who manage Defendant's territory offices in Wisconsin and Michigan. Defendant currently employs about 130 Specialists and has employed about 750 Specialists through the statutory period at issue in this litigation. Defendant classified Specialists as non-exempt from overtime requirements and paid them at either an hourly rate or a "unit pay" system, which is similar to piece rate payment.

Specialists do not work out of Defendant's territory offices. Rather, Specialists are based out of their homes, generally driving directly to customers' homes for installation and maintenance in company-owned vans and traveling to Defendant's territory offices only when needed to restock equipment. When Specialists drive directly to customers' homes, Defendant considered the Specialists' work days to begin when they arrived at their first job site and to end when they finished their last job, calculating any overtime payments to Specialists based on these times. Defendant did not consider Specialists' time spent driving from their homes to their first job sites, or from their final job sites back to their homes, as compensable time.

Defendant's written policies require Specialists to store all needed equipment in their vans along with their tools and other materials. However, Plaintiff alleged that their FSMs, wishing to minimize Specialists' trips to Defendant's territory offices, required them to keep more equipment on hand than would fit in their vans. Plaintiff alleged that this practice required Specialists to stockpile excess equipment in their homes and that they spent extensive time loading and unloading their vans at home each morning and evening. They further alleged that their FSMs were aware that they were doing so, as FSMs would at times bring equipment directly to Specialists' homes, conduct inventory audits of equipment stored in Specialists' homes, and assist them in moving and arranging equipment in their homes. Defendant denied these allegations, claiming that it does not limit the number of restocking trips that a Specialist may make to its territory offices. Defendant also produced signed vehicle use agreements from Plaintiff stating, among other things, that "[a]ll company equipment should remain in the [company-owned] vehicle at all times," and setting forth the expectations, responsibilities, and obligations of the Specialists in relation to use of the vehicles.

## I. Procedural History

On October 10, 2017, Class Representative, Brooks Goplin, filed this lawsuit under the FLSA, 29 U.S.C. § 201, et seq., and under Wis. Stat. § 109.03, as a collective action to recover unpaid overtime wages. (Dkt. # 1, Complaint.) In the Complaint, Goplin alleges that Defendant failed to pay overtime wages to him and other similarly-situated individuals for a period dating back to October 10, 2014. Later that

month, Goplin was joined by consent plaintiffs Dustin Bobb and Zachary Oquist (collectively, "Named Plaintiffs"). (Dkt. ## 4, 5, Consent Forms.)

Defendant sought to dismiss the Complaint by attempting to enforce a putative arbitration agreement with Goplin, which the Court denied in December 2017. (Dkt. ## 7, 20.) The next month, Defendant filed an Answer denying the Complaint's material allegations. (Dkt. # 21.) Defendant simultaneously appealed the Court's denial of its Motion to Dismiss based on Goplin's arbitration agreement to the Seventh Circuit. (Dkt. # 24.) The Seventh Circuit upheld this Court's decision, and the Supreme Court denied certiorari. *WeConnect, Inc. v. Goplin*, 139 S. Ct. 810 (2019).

Plaintiff moved for conditional class certification in March 2018, which the Court granted on December 6, 2018. (Dkt. # 44; dkt. # 77.) Shortly thereafter, the Court approved a notice to potential class members, and Defendant provided mailing information for 893 individuals meeting the class definition. (Dkt. # 80, Order Approving Notice.) Goplin's counsel ("Class Counsel") mailed notice to the collective class. A total of 192 individuals, including the Named Plaintiffs, filed consent forms to join the collective class ("collective class members" or "members"). (Dkt. ## 1.1, 4.1, 5.1, 15.1, 82.1, 83.1, 85.1, 86.1, 87.1, 88.1, 89.1, 90.1, 91.1, 94.1, 95.1, 97.1.)

## II.   Settlement Negotiations

After the notice period closed, the parties began settlement negotiations. The parties attended an in-person mediation on April 3, 2019, with Attorney Michael Fox, which did not result in immediate settlement. However, the parties reached a

settlement following continued arm's-length negotiations on April 26, 2019 and continued to negotiate the specific terms of that settlement in the following weeks.

To aid in settlement discussions, Defendant provided Class Counsel with time clock data from September 2015 to March 2019 and payroll data from October 2015 to December 2018 to allow Class Counsel to determine the value of each collective class member's claim. As a main point of contention was the amount of allegedly compensable time spent by class members traveling to and from their homes to job sites, Defendant analyzed the estimated drive time for the collective class members for the purposes of settlement discussions. Defendant identified the first and last job addresses for the class members for the period from March 2016 through July 2018. Defendant used a Google Maps macro to calculate the estimated drive time from the class members' home to their first work site of the day, and from the last work site of the day back home for the sample period. On average, the total drive time amounted to 76 minutes per day. Defendant did not agree that this was compensable work time, but this analysis enabled the parties to continue their settlement discussions.

To determine the full claim value for the class members, Class Counsel used the payroll and time clock records provided to determine the number of shifts worked and the hours recorded in each workweek worked by each class member. Based on the drive time analysis performed by Defendant, Class Counsel added the unrecorded drive time to each shift to estimate the member's total hours worked in each workweek, treating all hours beyond 40 as overtime and all hours under 40 as gap time, recoverable under Wis. Stat. § 109.

Next, Class Counsel determined the proper weekly pay rate for each class member. Because Defendant paid Specialists on a biweekly basis, Class Counsel estimated members' weekly pay by dividing their biweekly pay in half. Class Counsel determined each member's regular rate of pay by dividing the weekly pay by the hours worked, and calculated the overtime rate as 50% of the weekly regular rate. Class Counsel multiplied any additional overtime worked by the overtime rate to determine the overtime wages owed for each workweek, and determined any gap time wages by multiplying additional hours under 40 by the regular rate. Class Counsel then identified which of the class members had Wisconsin gap time claims. Finally, Class Counsel calculated the value of each member's claim by totaling all allegedly unpaid overtime wages for all workweeks falling within the three years prior to the member's consent filing and all gap time claims for Wisconsin work within the two years prior to the filing of this lawsuit. Under this method of calculation, the collective class members' unliquidated three-year claims totaled $506,608.81. The full value of the claim assuming liquidated damages of 100% on the FLSA claims and a two-year FLSA statute of limitations is $703,775.39. However, discovery and deposition testimony also suggested that Specialists did not perform compensable work before and after every shift, which reduces these totals. Assuming a majority of the weekly shifts, or three of five, are shifts where unpaid compensable work was performed, a 40% reduction in these totals in appreciated, resulting in an unliquidated three-year total of $303,965.23 and a liquidated two-year total of $527,831.54.

7

In addition to discussing damages, the parties discussed the underlying factual and legal issues in this matter. The primary dispute concerned whether Specialists' pre- and post-shift work and drive time were compensable. As a result, the parties disputed the application of the Portal-to-Portal Act and, more particularly, the Employee Commuting Flexibility Act of 1996, as well as the recent Wisconsin Supreme Court decision *Kieninger v. Crown Equipment Corp.*, 2019 WI 27 (March 20, 2019). The parties also disputed whether the Named Plaintiffs' FSMs' alleged management practices were unique to those FSMs or whether they represented a common employer practice. The parties also disputed the length of the Specialists' average unpaid daily drive time, a dispute with considerable effect on the Defendant's maximum liability.

Counsel for the parties are experienced in litigating collective and class action wage and hour lawsuits under the FLSA and Wisconsin law. Based on their experience, counsel engaged in arm's-length, good faith settlement negotiations on behalf of the collective class members in light of the disputed issues remaining to be resolved, the expense of continued litigation, and the inherent risks of litigation. The resulting settlement is for a total of $350,000. This amount includes funds to resolve the collective class members' FLSA claims in this matter and to recover for attorneys' fees and costs incurred by Class Counsel. The settlement will be paid as follows:

    a.   66.67% of the settlement, less actual costs of $10,727.49, or a maximum of $222,605.84, to be paid on a pro-rata basis to the collective class members who return a claim form as consideration for the resolution of their claims

for unpaid overtime wages and liquidated damages as asserted in this matter, including service payments totaling $15,000 for the Named Plaintiffs; and

b. 33.33% of the claimed settlement funds, or a maximum of $116,666.67, to be paid to Hawks Quindel, S.C., for attorneys' fees incurred by Class Counsel in prosecuting this matter, plus actual costs of $10,727.49. These fees and costs are detailed in the Declaration of David C. Zoeller accompanying this Motion. Total attorneys' fees incurred to date are $146,155.00. Counsel will only seek a fee on the amounts claimed through the settlement by class members submitting a timely claim form, resulting in a fee matching 1/3 of the total benefit provided to the class.

c. Individuals not accepting the settlement may exclude themselves from the agreement, and the statute of limitations on their claims will be tolled for 60 days following the close of the notice period to provide them with the opportunity to refile their claim individually.

Collective class members will receive up to $222,605.84 as payment for their claims for unpaid wages or Wisconsin gap time, unpaid overtime wages, and liquidated damages under the FLSA. This represents 73% of their unliquidated damages for the three-year statute of limitations or 42% of the two-year claim with FLSA liquidated damages. This amount will be divided among collective class members on a pro-rata basis. Members' recovery will be determined by dividing their individual, unliquidated three-year claim value by the total full value of all members'

claims to determine members' pro-rata percentage, then multiplying that percentage by the settlement funds remaining after accounting for attorneys' fees and costs and requested service payments. If this calculation yields recovery of less than $100 for any member, that member will receive $100. Using this calculation, the average initial claim value amounts to $2,162.56. To receive any payment under the Settlement Agreement, a member must execute and return an individual release of claims (attached as Ex. B to Zoeller Decl.). The allocated recovery of any member who fails to execute such a release will revert to Defendant, which will have the effect of reducing the settlement total.

## LEGAL SUPPORT

This settlement is a fair and reasonable resolution of the bona fide dispute over the FLSA provisions implicated by this lawsuit. *Lynn's Food Store, Inc.*, 679 F.2d at 1353. The parties have a genuine dispute over the compensability of Specialists' pre- and post-shift work and drive time. *Compare Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961 (W.D. Wis. 2008) (granting conditional certification to class of cable company technicians alleging FLSA violations for unpaid pre- and post-shift work, including loading and unloading equipment into company-owned vehicles and cleaning the vehicles, and drive time to and from their homes) *with Chambers v. Sears Roebuck & Co.*, 428 Fed. Appx. 400 (5th Cir. 2011) (per curiam) (holding that in-home service technicians' pre- and post-shift work, including loading parts and equipment into company-owned vehicles and cleaning the vehicles, and drive time to and from their homes was not compensable under the FLSA). In addition to this

dispute, a genuine question exists regarding the availability of liquidated damages and a third year of liability. The parties contested whether Defendant could establish that it acted in good faith, thereby precluding liquidated damages under 29 U.S.C. § 260, or whether the collective class could demonstrate that Defendant acted willfully, allowing a third year of liability under 29 U.S.C. § 255(a). Further, there is an outstanding question of whether the class members would have been able to proceed in court, as some may have been subject to enforceable arbitration agreements requiring at least some of the class members to individually litigate their claims in arbitration. (*See* dkt. # 77, Order on Mot. for Conditional Certification, at 7-10 ("[T]he court will conditionally certify the class now, but will order the parties to address the arbitration issue in their decertification and Rule 23 briefing.").)

Individual collective class members stand to recover a significant amount in this settlement, demonstrating the reasonableness of the settlement. Factors considered when reviewing settlement agreements for FLSA collective actions include "the range of reasonableness of the settlement fund in light of the best possible recovery [and] all the risks of litigation," such as the risks of establishing liability and damages. *Butz v. Automation Solutions of Am.*, No. 16-cv-696-jdp, 2017 U.S. Dist. LEXIS 142614, at *3 (W.D. Wis. Sep. 5, 2017, Peterson, J.) (citing *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)).

In this matter, assuming the class members were able to stay in district court and establish liability for 45 minutes of compensable pre- and post-shift work for each shift, the value of the FLSA overtime claims and Wisconsin gap time claims within

11

the three-year statute of limitations before adding penalties for liquidated damages amounts to $316,503.27. Assuming the class members defeat any good-faith defense to liquidated damages and recovered for the two-year FLSA statute of limitations, the full value of their claims would amount to $433,633.35. The recovery of $350,000 for the collective class is significant in light of the risk of no recovery or reduced recovery. After the requested attorneys' fees of 33.33% of the settlement fund plus actual costs, this amounts to a distribution of $222,605.84 to the collective class. After attorneys' fees and costs, this amounts to 73% of the value of their unliquidated three-year claim, with an average claim value of $2,162.56.

The Settlement Agreement, therefore, represents a modest compromise on the value of the collective class members' claims, particularly in light of Defendant's credible arguments against liability and a finding of willfulness, and for a good faith defense to liquidated damages, and whether this action could be maintained in court at all. *Compare Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987) (finding adequate a settlement of 10% of the total sought due to risks and costs of trial) *and Smoot v. Wieser Bros. Gen. Contr.*, No. 15-cv-424-jdp, 2016 U.S. Dist. LEXIS 57148 (W.D. Wis. April 28, 2016, Peterson, J.) (approving an FLSA settlement where class members "will lose some of their liquidated damages to pay class counsel" as "only a modest compromise from the class members' point of view") *with Larkin v. CPI Corp.*, No. 10-cv-411-wmc, 2011 U.S. Dist. LEXIS 127680 (W.D. Wis. Nov. 3, 2011, Conley, J.) (reserving judgment on plaintiff's motion for

12

approval of settlement where the parties provided insufficient information to allow the court to evaluate the reasonableness of the settlement).

In short, the Settlement Agreement was reached as a result of arm's-length negotiations between experienced counsel for the parties that considered the merits of Plaintiff's claims, Defendant's defenses, and the related evidence. The Settlement Agreement represents a fair resolution of Plaintiff's claims in light of the bona fide legal and factual disputes regarding Plaintiff's claims. The Settlement Agreement is between the collective class members and Defendant only. Potential class members who have not joined this lawsuit are not subject to, nor bound by, the Settlement Agreement. For the foregoing reasons, Plaintiff and Defendant request that the Court enter an order granting leave for Plaintiff to file the Amended Complaint, approving the Settlement Agreement, and dismissing the case with prejudice and without further costs to either party pursuant to Fed. R. Civ. P. 41.

Dated this 20th day of September, 2019.

Attorneys for the Plaintiff

By: */s/ David C. Zoeller*
**HAWKS QUINDEL, S.C.**
David C. Zoeller, State Bar No. 1052017
Email: dzoeller@hq-law.com
Caitlin M. Madden, State Bar No. 1089238
Email: cmadden@hq-law.com
Vanessa A. Kuettel, State Bar No. 1088329
Email: vkuettel@hq-law.com
409 East Main Street
Post Office Box 2155
Madison, Wisconsin 53701-2155
Telephone: (608) 257-0040
Facsimile: (608) 256-0236

Attorneys for the Defendant

By: */s/ Kurt A. Goehre*
**CONWAY, OLEJNICZAK & JERRY, S.C.**
Kurt A. Goehre, State Bar No. 1068003
Email: kag@lcojlaw.com
R. George Burnett, State Bar No. 1005964
Email: rwt@lcojlaw.com
231 South Adams Street
Post Office Box 23200
Green Bay, WI 54305-3200
Telephone: (920) 437-0476
Facsimile: (920) 437-2868

14