IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

BROOKS GOPLIN,
individually and on behalf
of all others similarly situated,

          Plaintiff,

v.

WECONNECT, INC.,

          Defendant.

OPINION and ORDER

17-cv-773-jdp

---

Plaintiff Brooks Goplin sued his former employer, WeConnect, Inc., on behalf of himself and others similarly situated, seeking to recover unpaid overtime wages under federal and state law. The court certified Goplin's proposed collective action under the Fair Labor Standards Act (FLSA), 28 U.S.C. §§ 201–19. *See* Dkt. 77. Now before the court is the parties' joint motion seeking court approval of their settlement and dismissal of the case with prejudice. Dkt. 100. As part of that settlement, plaintiffs seek to amend their complaint to remove their Federal Rule of Civil Procedure 23 class action allegations, as the parties' settlement affects only those who opted into the FLSA collective. *See* Dkt. 101-1, at 35–42. Because the court never certified plaintiffs' proposed Rule 23 class, they are free to voluntarily dismiss their class claims. The court will accept the amended complaint. The parties' proposed settlement is reasonable, so the court will approve it and dismiss the case with prejudice.

BACKGROUND

Goplin worked for WeConnect as a home entertainment specialist, traveling in a company van to customers' homes to install and maintain satellite dish systems. WeConnect

paid Goplin and other home entertainment specialists only from the time they arrived at their first site to the time they finished their last job. It did not compensate them for time spent driving from their homes to their first job sites, or from their final job back to their homes.

Goplin sued, asserting that WeConnect's pay practices violated the FLSA and the Wisconsin Wage Payment and Collection Act. The court conditionally certified a collective under 29 U.S.C. § 216(b) of all specialists who worked for WeConnect on or after March 6, 2015. Dkt. 77. A total of 192 individuals filed consent forms to join the collective class.

After the notice period closed, the parties reached a settlement totaling $350,000. They propose to apportion that settlement as follows:

  a. 66.67% of the settlement (minus $10,727.49 in actual costs), or a maximum of $222,605.84, to be paid on a pro-rata basis to collective class members who return a claim form as consideration for the resolution of their claims, including service payments totaling $15,000 for the three named plaintiffs.

  b. 33.33% of the claimed settlement funds, or a maximum of $116,666.67, to be paid to plaintiffs' counsel, Hawks Quindel, S.C., for attorney fees, plus actual costs of $10,727.49. Plaintiffs' counsel will seek a contingent fee only on the amounts claimed through the settlement by class members submitting a timely claim form, meaning that their fees will not exceed one-third of the total benefit provided to the class.

  c. Individuals not accepting the settlement may exclude themselves from the agreement, and the statute of limitations on their claims will be tolled for 60 days following the close of the notice period to provide them with the opportunity to refile their claims individually.

  d. Unclaimed settlement funds will revert to WeConnect.

To determine each collective class member's individual recovery, each member's individual, unliquidated three-year claim value will be divided by the total full value of all

members' claims to determine that individual's pro-rata percentage. That percentage will then be multiplied by the settlement funds remaining after subtracting attorney fees and costs and the requested service payments. If this calculation yields a recovery of less than $100 for any member, that member will receive $100. Based on the parties' calculations, the average initial claim value amounts to $2,162.56.

ANALYSIS

The parties seek approval of their settlement agreement, as required in cases brought under the FLSA. *See Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986). In approving a FLSA settlement, the court must determine whether the settlements terms and conditions represent "a fair and reasonable resolution of a bona fide dispute over FLSA provisions" and reflect a "compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching." *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). Factors considered when reviewing settlement agreements for FLSA collective actions include "'the range of reasonableness of the settlement funds in light of the best possible recovery [and] all the risks of litigation,' such as the risks of establishing liability and damages." *Butz v. Automation Sols. of Am., Inc.*, No. 16-cv-696-jdp, 2017 WL 5713986, at *1 (W.D. Wis. Nov. 7, 2017) (quoting *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 995 (N.D. Ind. 2010)) (alterations in original).

Here, the court is persuaded that the parties' proposed settlement represents a fair and reasonable resolution of a bona fide dispute under the FLSA. The parties arrived at the $350,000 sum by calculating the full value for the opt-in collective members,[1] and then

---

[1] According to plaintiffs' calculations, the unliquidated three-year damages totaled

discounting that amount because of various factual and legal disputes that made recovery less than certain. For example, the parties disputed whether the specialists' pre- and post-shift work and drive time was compensable. Plaintiffs contended that their FLSA claims weren't subject to the Employee Commuting Flexibility Act of 1996, 29 U.S.C. § 254 (2012), and that their state-law claims were unaffected by a recent Wisconsin Supreme Court decision holding that time spent commuting in company vehicles is not compensable. *See Kieninger v. Crown Equip. Corp.*, 2019 WI 27, 386 Wis. 2d 1, 924 N.W.2d 172. WeConnect disagreed. The parties also disputed plaintiffs' allegation that WeConnect management required specialists to stockpile equipment in their homes, forcing specialists to spend time off-the-clock loading and unloading their vans. WeConnect contended that the loading requirement was limited to the plaintiffs' managers and did not reflect widespread company practice. There were further questions about whether some members of the collective were subject to enforceable arbitration agreements, *see* Dkt. 77, at 7–10 (discussing this issue); whether WeConnect acted in good faith (thereby precluding liquidated damages under 29 U.S.C. § 260); or whether plaintiffs could demonstrate that WeConnect acted willfully (thereby allowing a third year of liability under 29 U.S.C. § 255(a)). Given these disputes of law and fact, the proposed $350,000 sum represents a favorable compromise of plaintiffs' claims.

The court is likewise satisfied that the proposed apportionment of the $350,000 between the collective class members and plaintiffs' counsel are reasonable. After accounting for costs, the $222,605.84 that the parties proposed to distribute to the collective class represents 73% of the total value of the collective class's unliquidated three-year claim. Given

---

$316,503.27, and the liquidated two-year damages totaled $433,633.35.

4

the risk of non-recovery that plaintiffs faced, this settlement amount is reasonable. And the proposed $15,000 service award to the three named plaintiffs ($5,000 each) reasonably recognizes their time and effort in prosecuting this case.

Courts often disfavor reversionary settlements—that is, settlements under which the defendant recaptures unclaimed funds—because they can create perverse incentives for defendants and class counsel to minimize the compensation actually paid to the collective class. *See Pearson v. NBTY, Inc.*, 772 F.3d 778, 783 (7th Cir. 2014). But that is not a concern here, where plaintiffs' counsel will receive attorney fees as a percentage of the actual payout and will thus have an incentive to maximize the number of claims filed.

Plaintiffs' counsel's request for a fee award totaling one-third of the settlement value plus $10,727.49 in out-of-pocket costs is likewise reasonable. Plaintiffs' contemporaneous billing records show that five individuals have billed $147,530.00 to date on this case—well more than the $116,666.67 plaintiffs' counsel stands to receive if all the settlement funds are claimed. Plaintiffs' counsel's one-third contingency arrangement falls within the standard market range for representation of plaintiffs in wage and hour matters, which ranges from 30% to 33.33%. *See* Dkt. 105 and Dkt. 106. And the $10,727.49 in out-of-pocket costs incurred by plaintiffs' counsel for depositions, mediation, postage, and other routine litigation expenses is also reasonable considering the nature and procedural history of this case.

The court has reviewed the proposed process by which collective class members will be notified of their claims, along with the settlement notice and claim form, Dkt. 101-2. To receive any payment under the parties' settlement agreement, a class member must execute and return an individual release of claims within 60 days of the date the notice and claim form is mailed. If a class member fails to execute a release, his or her allocated recovery will revert to

5

WeConnect. Individuals who reject the settlement will have the statute of limitations on their claims tolled for 60 days following the close of the notice period so that they have an opportunity to file an individual claim. The court concludes that this process is satisfactory, and that the notice and claim form sufficiently informs members of the settlement collective of the terms of the settlement, including how they may participate (or not participate), the amount to which they are entitled under the allocation formula, the scope of the release, and the request for attorney fees and costs.

Because all aspects of the settlement agreement appear to be reasonable, the court will approve it and dismiss this case with prejudice.

ORDER

IT IS ORDERED that:

1. The parties' joint motion for final approval of their settlement agreement, Dkt. 100, is GRANTED. Plaintiffs' amended complaint is ACCEPTED, and the Rule 23 class allegations are DISMISSED. The settlement is APPROVED.

2. Pursuant to the parties' stipulation, all claims are DISMISSED with prejudice. The clerk of court is directed to close this case.

Entered November 25, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge